UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELANIE F. DAVIS,<br>    *Plaintiff*, | )<br>)<br>) | |
| *vs*. | ) | 1:10-cv-1365-JMS-MJD |
| | ) | |
| RAYTHEON TECHNICAL SERVICES COMPANY LLC,<br>    *Defendant.* | )<br>)<br>)<br>) | |

## ORDER

Presently pending before the Court are cross-motions to enforce a settlement agreement between the parties to this action, Defendant Raytheon Technical Services Company LLC ("Raytheon") and Plaintiff Melanie F. Davis. [Dkts. 43; 58.] The Court held a hearing on the parties' motions after briefing, and the matter is now ripe for decision.

### I.
#### BACKGROUND

In October 2010, Ms. Davis filed an employment discrimination action against her former employer, Raytheon. [Dkt. 1.] On December 15, 2011, Magistrate Judge Tim Baker issued an order setting a settlement conference for January 20, 2012, and specifically ordering that "**clients or client representatives with complete authority to negotiate and communicate a settlement shall attend the settlement conference along with their counsel**." [Dkt. 33 at 1 (original emphasis).]

The parties appeared in person and by counsel for the settlement conference and Magistrate Judge Baker later reported that "[s]ettlement discussions were held, and this case is now settled." [Dkt. 37.] Pending deadlines were vacated and the parties were ordered to file a stipulation of dismissal within 30 days. [*Id.*] Before leaving the settlement conference, a handwritten

settlement agreement (the "Agreement") was drafted and signed by Ms. Davis, a representative of Raytheon, and by both parties' counsel. [Dkt. 43-1.] At issue is Paragraph 6 of the Agreement, which provides:

> (6) PARTIES AGREE TO STIPULATE TO A DISMISSAL WITH PREJUDICE AND ~~PARTIES~~ WILL WAIVE AND RELEASE ANY AND ALL CLAIMS AGAINST ONE ANOTHER AS OF THE DATE OF EXECUTION OF THIS AGREEMENT.

[Dkt. 43-1 at 3.]

In March 2012, after various extensions regarding the stipulation of dismissal, Raytheon moved to enforce the settlement agreement, arguing that the Agreement "was not intended by either party to be more than a summary of terms." [Dkt. 43 at 2.] Raytheon indicated that Ms. Davis had refused to sign a separate typed settlement agreement, which included a release of Raytheon's employees, because she was considering pursuing defamation claims against certain employees and did not believe that the signed Agreement released them. [*Id.*] Accordingly, Raytheon asked the Court to "enforce the parties' settlement, including a general release against Raytheon and its affiliates, including present and former agents and employees." [*Id.* at 3.]

In response to Raytheon's motion, Ms. Davis asked the Court to enforce the terms of the Agreement. [Dkt. 58.] Ms. Davis confirmed that she was considering filing suit against various Raytheon employees and contended that she had not agreed to release claims against those employees in the Agreement. Ultimately, Ms. Davis asked the Court to deny Raytheon's motion and enforce the Agreement to release any claims between Ms. Davis and Raytheon, but not as to any of Raytheon's employees individually. [*Id.*]

## II.
### DISCUSSION

### A. Applicable Law

A district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). "Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law, and therefore we must look to the law of Indiana in deciding this claim." *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000) (citation omitted).[1] Therefore, the Court will apply Indiana law to resolve the parties' cross-motions.

### B. Authority to Settle

Raytheon argues that Ms. Davis' counsel had the authority to settle this action, so the Court should consider the intent of Ms. Davis' counsel, not Ms. Davis, when analyzing the Agreement. [Dkt. 61 at 2-5.] Ms. Davis disputes that her counsel had such authority. [Dkt. 67 at 3.]

The Court rejects Raytheon's argument because it would contravene the Court's practice as communicated to the parties, [*see* dkt. 33 at 1 (Magistrate Judge Baker's order emphasizing that "clients or client representatives with complete authority to negotiate and communicate a settlement shall attend the settlement conference along with their counsel") (emphasis removed)], and with which Ms. Davis complied. Ms. Davis appeared at and participated in the set-

---

[1] Raytheon cited the Seventh Circuit's decision in *Pohl* for Raytheon's contention that "[i]t remains unsettled under Seventh Circuit law whether a dispute over the settlement of a federal case arises under state or federal law." [Dkt. 61 at 2 (citing "*Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000)".] The quote Raytheon cites actually comes from the district court decision in *Pohl*, which was affirmed by the Seventh Circuit after unambiguously holding that "we must look to the law of Indiana in deciding this claim" regarding "the enforceability of a settlement agreement." *Pohl*, 213 F.3d at 338. Therefore, this Court will apply Indiana law.

tlement conference and ultimately signed the Agreement she reached with Raytheon. [Dkt. 43-1 at 3.]

Moreover, it is clear that Raytheon believed that Ms. Davis acted on her own behalf at the settlement conference or it would have raised this issue in its opening brief. *See Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1166 (Ind. 1989) (holding that in order for an attorney to have apparent authority to settle a case, some form of communication must come from the client that instills a reasonable belief in the mind of the third party that the attorney has authority to settle). Instead, only after a dispute arose between Ms. Davis and her counsel regarding his motion to withdraw did Raytheon suspect that Ms. Davis may have given her counsel more authority than what it appeared to Raytheon at the settlement conference.

Ultimately, Ms. Davis complied with the Court's order, attended and participated in the settlement conference, and signed the Agreement she reached with Raytheon. Therefore, the Court rejects Raytheon's argument that it should look to counsel's intent when resolving the parties' cross-motions to enforce settlement agreement.

### C. Existence of Enforceable Agreement

Raytheon argues that the Agreement was no more than a "summary of terms" and that the parties planned to enter into a more formal agreement to follow. [Dkt. 43 at 2.] Raytheon further contends that "it is apparent that Raytheon and [Ms. Davis] did not have a meeting of the minds as to an essential term of the settlement agreement, and an enforceable settlement agree-

ment has not been reached."[2] [Dkt. 61 at 5.] Raytheon argues that there was no meeting of the minds between it and Ms. Davis because "despite outward appearances at the settlement conference" Raytheon and Ms. Davis failed to reach an agreement regarding the scope of the release of claims. [*Id.* at 6.]

The existence of a contract is a question of law. *Morris v. Crain*, 969 N.E.2d 119, 123 (Ind. Ct. App. 2012). A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract.[3] *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005). "The intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it. A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct." *Id.*

As Raytheon admits, by all outward appearances the parties entered into a legally enforceable contract at the settlement conference. [Dkt. 61 at 6 (arguing that there was no contract "*despite outward appearances* at the settlement conference") (emphasis added).] Specifically, they mediated their dispute and then drafted and signed the Agreement, which did not provide that it was a "summary of terms" or contain a clause contemplating a more formal agreement to follow. [Dkt. 43-1.] Although Raytheon argues that there was no meeting of the minds on the scope of the release in Paragraph 6 of the Agreement, Indiana law focuses on the parties' final expression as found in their conduct, not on any hidden intentions, to determine whether a contract exists. By all outward appearances, the parties reached a settlement and memorialized it as

---

[2] Raytheon presents this as an alternative argument to its primary argument that the parties *did* reach an agreement at the settlement conference but that the scope of the release is ambiguous and the Court should look to extrinsic evidence to interpret it. [Dkt. 61 at 2-5.] As Raytheon concedes, that argument turned on its belief that Ms. Davis' counsel's intent was determinative. Because the Court has rejected the underlying argument, it must first determine whether the parties entered into an enforceable agreement.

[3] Forming a contract also requires an offer, acceptance, and consideration, *Morris*, 969 N.E.2d at 123, but the parties do not dispute that those requirements were met.

the Agreement, which the Court concludes is an enforceable contract. The scope of the release is a matter of contract interpretation that the Court will address below, but it does not change the conclusion that the Agreement is enforceable.

### D. Interpreting the Agreement

The parties dispute whether the scope of the release in Paragraph 6 of the Agreement is ambiguous:

> (6) PARTIES AGREE TO STIPULATE TO A DISMISSAL WITH PREJUDICE AND ~~PARTIES~~ PARTIES WILL WAIVE AND RELEASE ANY AND ALL CLAIMS AGAINST ONE ANOTHER AS OF THE DATE OF EXECUTION OF THIS AGREEMENT.

[Dkt. 43-1 at 3.]

Raytheon argues that the phrase "parties will waive and release any and all claims against one another" is ambiguous because it is unclear whether Ms. Davis released any claims against Raytheon alone as a corporate entity (Ms. Davis' interpretation) or whether she also released claims against Raytheon's individual employees (Raytheon's interpretation). Raytheon cites the parties' disagreement as support for its proffered ambiguity and also presents extrinsic evidence to support its proposed interpretation. [*See, e.g.*, dkts. 61 at 3; 74-1; 74-2.]

Ms. Davis argues that the release in the Agreement is not ambiguous and, therefore, the Court should not consider extrinsic evidence. [Dkts. 67 at 1-2; 75.]

The goal of contract interpretation is to ascertain and give effect to the parties' intent, "as reasonably manifested by the language of the agreement." *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). "Indiana follows 'the four corners rule' that extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms

of the instrument are susceptible of a clear and unambiguous construction." *Univ. of S. Indiana Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006). "Clear and unambiguous terms in the contract are deemed conclusive, and when they are present [the Court] will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions." *Ryan v. Ryan*, 972 N.E.2d 359, 364 (Ind. 2012). A contract is ambiguous if a reasonable person would find it subject to more than one interpretation. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). A contract is not ambiguous simply because the parties favor different interpretations. *Kelly v. Hamilton*, 816 N.E.2d 1188, 1193 (Ind. Ct. App. 2004).

Raytheon argues that a latent ambiguity is present in the Agreement; however, the Indiana Supreme Court has rejected the distinction between latent and patent ambiguities, holding that "where an instrument is ambiguous, all relevant extrinsic evidence may properly be considered in resolving the ambiguity." *Baker*, 843 N.E.2d at 535. In so holding, the Indiana Supreme Court rejected an opportunity to abolish the four corners rule. *Id.* at n.2; *see also Roberts v. Community Hosps. of Ind., Inc.*, 897 N.E.2d 458, 467 (Ind. 2009) (reaffirming that Indiana "follows the four corners rule"). Accordingly, this Court will not consider extrinsic evidence unless the Agreement is ambiguous.

The Court does not find the scope of the release in the Agreement to be ambiguous. The parties' intent, as reasonably manifested by the language of the Agreement, unambiguously provides that the "parties" will waive and release any and all claims "against one another." [Dkt. 43-1 at 3.] Giving these terms their plain and ordinary meaning results in a clear and unambiguous construction that the word "parties" means the two parties to this action—Ms. Davis and Raytheon. Ms. Davis and Raytheon are the only ones listed at the beginning of the Agreement and they are the only parties who signed the Agreement. [Dkt. 43-1 at 2.] Moreover, the parties

contemplated Raytheon's subsidiaries and affiliates in another paragraph, [*see* dkt. 43-1 at 2 ¶ 3 ("Davis will not reapply for employment at Raytheon [or] any of its subsidiaries or affiliates."],  but did not include them in the paragraph at issue.

For these reasons, the Court finds that the scope of the release in Paragraph 6 of the Agreement is clear and unambiguous and that Ms. Davis did not release any claims against Raytheon's employees. Raytheon's attempt to create an ambiguity simply because the parties dispute the meaning, [dkt. 61 at 3], contravenes Indiana law, *see Kelly*, 816 N.E.2d at 1193 (holding that a contract is not ambiguous simply because the parties favor different interpretations). Because no ambiguity exists, the Court will not consider extrinsic evidence and, instead, finds Paragraph 6 to be enforceable as written.

### III.
### CONCLUSION

For the reasons stated herein, the Court **GRANTS** both parties' motions to the extent that the Court concludes that the Agreement entered into and executed at the settlement conference is an enforceable contract. [Dkts. 43; 58.] The Court further concludes that the parties' Agreement is not ambiguous; therefore, it will not consider extrinsic evidence. Applying the principles of contract interpretation, the Court concludes that any claims Ms. Davis had against Raytheon's individual employees on the date the Agreement was executed are not covered by the scope of the release in Paragraph 6 of the Agreement.

Within **14 days** Raytheon shall deliver the agreed sum in three checks as contemplated by Paragraph 1 of the Agreement and shall promptly notify the Court after such delivery has been made, at which time the Court will dismiss this action with prejudice. The other terms of the Agreement shall also then take effect without further action by the Court.

11/13/2012

                                        Hon. Jane Magnus-Stinson, Judge
                                        United States District Court
                                        Southern District of Indiana

**Distribution via US Mail:**

MELANIE F. DAVIS
10621 Glen Cairn Ct
Fishers, IN 46037

**Distribution via ECF only:**

Jason Porter Cleveland
JOHN H. HASKIN & ASSOCIATES
jcleveland@hlllaw.com

Rozlyn M. Fulgoni-Britton
FAEGRE BAKER DANIELS LLP - Indianapolis
rozlyn.fulgoni-britton@faegrebd.com

Roberta Sabin Recker
FAEGRE BAKER DANIELS LLP - Indianapolis
rsrecker@FaegreBD.com